Kelsey *v.* Murray.

———————◆———————

## CHARLES KELSEY *vs.* ROBERT MURRAY, United States marshal, &c.

In an action by the plaintiff, the owner of a wharf or dock at the foot of Sedgwick street, Brooklyn, to recover a sum claimed to be due from the defendant, for wharfage, the defendant attempted to show the wharf or pier to be within the county of New York, inferentially, from the following statutes and facts, viz: The county of Kings is bounded northerly by the county of New York; the county of New York contains all the land under water to low water mark, on Long Island; the statute, (*Laws of* 1836, *ch.* 484, § 2,) makes the bulkhead line to be located in pursuance of its provisions, the permanent water line of the city of Brooklyn, and prohibits the extension of any bulkhead into the East river beyond such line. In 1857, the legislature established a bulkhead line, or line of solid filling, and prohibited the filling in with solid material in the waters of the port beyond such bulkhead line. The evidence did not show where the line of low water mark was, or the bulkhead line established by law. There was a bulkhead at the foot of Sedgwick street, and the wharf or pier in question extended 450 feet into the water beyond; but it was not shown that such bulkhead extended to the line established by law. *Held,* that it could not be assumed that the law prohibiting the erection of a wharf or pier of solid material in the water outside of a certain line had been violated. That there was no necessary sequence, from the statutes referred to, or the evidence in the case, that the premises were not in the city of Brooklyn.

*Held, also,* that the lessees of the plaintiff having been dispossessed of the premises, under summary proceedings instituted by the plaintiff, before the city judge of Brooklyn, for non-payment of rent, and the judgment of dispossession having been affirmed by the Supreme Court, on *certiorari,* such judgment and affirmance were a conclusive bar to any claim to the wharfage by the lessees of the plaintiff.

APPEAL, by the defendant, from a judgment entered upon the report of a referee.

The plaintiff, the owner of a certain addition to a pier

Kelsey *v.* Murray.

or wharf at the foot of Sedgwick street, Brooklyn,(*a*) commenced an action against Robert Murray, marshal of

(*a*) Diagram of premises in question.

EAST RIVER.

OLD PIER.

Pier in question, About 418 Feet in Length. About 30 Feet Wide.

Where the vessels lay.

WATER.

40 Feet.

BULKHEAD.

BULKHEAD.

UNION STORES.

SEDWICK ST.

Kelsey *v.* Murray.

the southern district of New York, to recover the sum of $5166.64, the amount of certain wharfages, which the plaintiff claimed as being due to him for divers prize vessels placed by the said marshal at the said addition, and by him left there, moored for certain periods, during which certain proceedings were had in the United States District Court on the prize side of that court, under which the said vessels were sold, and the proceeds paid into court. The plaintiff presented bills for said wharfages to the marshal, who taxed them as part of his costs in those proceedings, collected, received and held them at the commencement of this suit in the court below, to the use of the plaintiff. The marshal interposed in substance two defenses, viz : 1st. That the wharf in question was held by Ward & Gove, under a lease from the plaintiff for ten years from September 27, 1858, by virtue of which lease he insisted that the said Ward & Gove were entitled to these wharfages. 2d. That as such marshal, he admits he received $3386, of these wharfages for certain vessels, (naming them,) which he stands ready and always willing to pay into court, or to the persons entitled thereto, and he prays the judgment of the court in the premises, as to who is entitled to the same ; and that he may be permitted to pay the same into court and be discharged from all liability therefor. 3d. He admits, further, having received $245.21, for wharfages of certain vessels, naming them, which he has paid over to Ward & Gove, before notice of the plaintiff's claim.

This cause was referred to the Hon. John T. Hoffman, as sole referee, who, after hearing the cause, rendered his report in favor of the plaintiff, for the money which the marshal admitted he had received from the proceeds of the different vessels, and which he stood ready to pay over, viz. $3386 and interest on that amount, also for the moneys which the marshal admitted he had received, but had paid over to Ward & Gove without notice of the plaintiff's claim.

On this question of notice the referee found against the marshal, *in all, with interest,* $3885.41.

From the judgment entered on this report, the marshal appealed to the general term.

*B. F. Tracy,* for the appellant. I. The navigable rivers are public highways, and no person can impose a burden on those navigating such rivers except by a license from the sovereign power. Any person may use a wharf or a pier, and those who would impose a burden for such use must show their *right.* 1. There is a license implied by law to all persons navigating public waters to occupy wharves and piers. (*Heany* v. *Heeney,* 2 *Denio,* 625. Taylor et al. v. The Atlantic Mut. Insur. Company, 2 Bosw. 106.) 2. The right to take tolls being a charge upon the public and against common right, could not be granted even by the crown, except upon consideration of benefit to the public, as the erection of a wharf or keeping it in repair, &c. (*Sir F. Moor's R.* 474. 1 *Term. Rep.* 660.) A franchise, in this country, is a privilege or immunity of a public nature which cannot legally be exercised without legislative grant. (*The People* v. *Utica Insurance Company,* 15 *John.* 358.) The right to erect a wharf and to receive tolls for the use thereof is a *franchise,* and cannot be exercised by an individual citizen except under a grant for that purpose from the sovereign power. (*Wiswall* v. *Hall,* 3 *Paige,* 313.) The right to claim wharfage does not rest in contract. The owner or master is not a tenant of the owner of the pier. (*Nicoll* v. *Gardner,* 13 *Wend.* 288, 292.) The right to demand wharfage, and the amount to be demanded, are both fixed by law. (*Id.*) An agreement to pay wharfage to one not entitled to receive it, or an agreement to pay more than the legal amount, would be void for want of consideration. He who demands wharfage, therefore, must establish his right to receive it. It is not enough in an action for wharfage, therefore, to show that the party claiming wharfage is the owner or in possession of said wharf.

He must go further and show that he owns the franchise—the right to demand and receive wharfage; in other words, he must show his right to construct a pier in the navigable river. It is always a good defense to show that the plaintiff is not entitled to demand and receive the wharfage for the use of the pier. In distress for wharfage, it must appear that the party distraining is entitled to collect the wharfage. (*Marshall* v. *Vultee,* 1 *E. D. Smith,* 294.)

II. The plaintiff was not entitled to collect wharfage for vessels lying in the waters fronting the premises leased to Ward & Gove. 1. The city judge of Brooklyn had no jurisdiction in the premises. The pretended possession of the addition derived from the sheriff was wholly void, and the plaintiff was a trespasser. 2. Even if it were legal, the possession of the addition would not authorize the plaintiff under the covenants in the first lease (September, 1858,) to collect wharfage for vessels lying in front of said premises. (*a.*) The city judge of the city of Brooklyn may exercise, *within the county of Kings,* all the powers   *   *   *   *   and perform all such duties and do all such acts as might have been done or performed under the laws in force on the 12th day of May, 1847, by the judges of the court of common pleas or by any one or more of them. (*Laws of* 1849, *ch.* 125, § 26.) (*b.*) The pier was not situate within Kings county. The county of Kings is bounded northerly by the county of New York. The county of New York contains   *   *   *   all the *land under water* within the following bounds: Beginning at Spuyten Duyvel creek   *   *   *   *   then to cross over to Nassau or Long Island at low water mark   *   *   * then along Nassau or Long Island shore at low water mark to the south side of the Red Hook. (*Edmonds' Stat. at Large, vol.* 5, *App. p.* 52.) This pier stood north of the Red Hook in the East river at the foot of Sedgwick street in the city of Brooklyn. The second section of the act of May 25, 1836, (*Laws of* 1836, *ch.* 484,) by its terms makes the line of bulkhead, to be located in pursuance of its pro-

visions, the permanent water line of the city of Brooklyn, and prohibited the extending of any bulkhead into the East river beyond such line. (*See also Laws of* 1848, *ch.* 156, *and* 1850, *ch.* 313.) The act of the 17th of April, 1857, establishes a bulkhead line or line of solid filling, and provides that "it shall not be lawful to fill in with earth, stone or other solid material, in the waters of said port beyond the bulkhead line or line of solid filling hereby established." The pier in question extended from the bulkhead line or line of solid filling out about 450 feet into the East river. The addition in question commenced 40 feet from the bulkhead in deep water and extended into the river 418 feet. It was, therefore, within the city and county of New York and without the jurisdiction of the city of Brooklyn. In *Udall* v. *The Trustees of Brooklyn,* (19 *John.* 175,) the Supreme Court decided that the county of Kings includes all the *wharves* and *made* land on the Long Island shore of the East river, as well as natural alluvia to the *actual* line of low water mark. The principle of this decision would, we concede, carry the line of Kings county to the line of *solid filling* or made land without reference to the line of ancient low water mark, and this bulkhead line or line of solid filling becomes the boundary line between Kings county and New York. But in *Stryker* v. *The Mayor, &c. of New York,* reported in the same volume, p. 179, the court held that a vessel fastened to the dock on the Brooklyn shore is within the county of New York. The court distinguish this from the case of *Udall* v. *The Trustees of Brooklyn,* (*supra,*) and say that the city and county of New York includes the whole of the rivers and harbor of New York to *actual low water mark.* The principle of these cases is to make the permanent bulkhead line, or ine of solid filling, the boundary line between New York and Kings. This gives a uniform, permanent and well defined line. The pier in question stands in the water and outside the bulkhead line. The land on which it stands is clearly within the county of New York. It would seem

Kelsey *v.* Murray.

absurd to hold that a superstructure erected on this land could be in a different county and subject to a different jurisdiction. The city judge of Brooklyn, therefore, had no jurisdiction to entertain the proceedings in this case, and his judgment therein is simply a nullity.

III. The jurisdiction of any court exercising authority over a subject may be inquired into in any court where the proceedings of the former are relied on and brought before the latter by the party claiming the benefit of such proceedings. (*Elliott* v. *Piersol,* 1 *Peters,* 328, 340. *The Chemung Canal Bank* v. *Judson,* 8 *N. Y. Rep.* 254, 259. *Adams* v. *The Saratoga R. R. Co.* 10 *id.* 328. *Simmons* v. *De Barre,* 8 *Abb. Pr.* 269.)

" When a court has jurisdiction it has a right to decide every question which occurs in the cause, and whether its decision be correct or otherwise, its judgment is regarded as binding in every other court. But if it act without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void, and form no bar to a recovery sought (even prior to a reversal) in opposition to them. They constitute no justification, and persons concerned in executing such judgments or sentences are considered in law as trespassers." (*Elliott* v. *Piersol, supra.*) This language is expressly approved in *The Chemung Canal Bank* v. *Judson, (supra.)*

To entitle the plaintiff to collect and receive wharfage for the use of a pier, he must have been lawfully possessed of the franchise which he claimed. Certainly a mere trespasser cannot demand wharfage. The plaintiff had no other claim to this franchise except such as he derived from the proceedings before the city judge.

If these proceedings are an absolute nullity, the plaintiff was a trespasser, and had no more right than any other trespasser to collect wharfage from vessels making fast to the pier.

*D. & T. McMahon,* for the respondent.   I.  The defendant could not urge a nonsuit.   In his answer he expressly admits his liability in the character in which he is sued, and his willingness to pay over $3386, for the wharfage of certain vessels to whomsoever entitled, and prays the judgment of this court, that it may order him to pay that money into court, and be relieved from further inquiry about it ;  that he may be allowed his costs of defense ;  and he prays no other relief.   This defense is the purely equitable one of an interpleader, not a denial of his personal liability to pay the wharfage in question.   By section 150 of the Code, a defendant may set up an equitable defense or counter-claim.   Where a defendant seeks to avail himself of a right to interplead, he submits himself to the direction of the court, and merely asks its direction as to which of the adverse claimants he shall pay the fund.   The only decree he is entitled to, is the liberty to bring the fund into court and have his costs, leaving the defendants to settle the question of ownership between themselves.   (*Bedell* v. *Hoffman,* 2 *Paige,* 200.)   Where a party seeks to interplead, he must admit a title as against himself in all the defendants.   (*Gwin* v. *Greene,* 1 *Ire. Eq.* 229.   *Anderson* v. *Williams,* 10 *S. & M.* 60.)

II. The defendant was properly sued as United States marshal on an individual liability growing out of his position as marshal.

III. Robert Murray, by his action in this case as United States marshal, has rendered himself personally liable in his official character to the plaintiff.

IV. The amount reported in favor of the plaintiff by the referee, was correct.

V. On the motion for nonsuit, the defendant could not urge that there was a defect of parties, viz. Ward & Gove. No such defense is set up in sections 144, 147 and 148 of the Code.   (*Zabriskie* v. *Smith,* 3 *Kern.* 322.   *Mayhew* v. *Robinson,* 10 *How.* 162.)   It is not even a ground of variance. (*Carter* v. *Hope,* 10 *Barb.* 180.)

VI. The referee properly overruled the ground of nonsuit taken by the defense, that the claim of Ward & Gove, by virtue of the lease of 1858, to the dockage and wharfage in question, was valid. (*a.*) Ward & Gove, after accepting their lease of 1858, modified the rights acquired thereunder, by a new agreement with the plaintiff, in pursuance of which, it was agreed that the plaintiff should build the addition in question, and should let and rent the same to Ward, Gove & Morris, for $1700 per annum. In pursuance of this lease, the plaintiff built the new pier or addition in question, and completed the same prior to 1861, and the tenants, Ward, Gove & Morris, occupied the same thereunder, until January 1, 1862. Soon after which day, they refusing to pay the rent, the plaintiff instituted summary proceedings, to turn the tenants, Ward, Gove & Morris, out for non-payment of rent. This matter was adjudicated before City Judge Reynolds and a jury, and a verdict rendered for the plaintiff, the landlord, under which adjudication the tenants on the 22d day of January, 1862, were dispossessed, and the plaintiff put in possession. This adjudication was finally affirmed in the Supreme Court at general term, on *certiorari* from these proceedings. This adjudication was conclusive on the right of the plaintiff to the wharfages in question, as against Ward & Gove, the lessees under the lease of 1858, which lease was introduced in the proceedings.. All the wharfages claimed for, in this suit, and allowed by the referee, were for vessels stationed at that addition, on and after January 22, 1862. Notice of the decision was immediately given to the marshal. The marshal recognized the possession of the plaintiff, by taking bills from him for those wharfages made out as debtor to Mr. Kelsey, taxed them as part of his disbursements, collected the same and held them for the benefit of the party entitled. (*b.*) The right to wharfage attaches whenever the vessel uses or makes fast to any pier, wharf or bulkhead. (*See Laws of* 1860, *ch.* 254, *p.* 416.) This first section uses the words "It shall be lawful to charge and receive wharfage, dockage," &c. The

2d section provides that if the wharfages is not paid in twenty-four hours after demand, the owners of the wharf or pier shall be entitled to collect double the rates of wharfage. The words " owners of the wharf," in the 2d section, are used descriptively of the class of persons entitled to the wharfages, viz. those in the possession of the side of the pier, or of the bulkhead to which the vessel is attached. In this case the claim in suit is not to collect wharfage of the ship owners ; that has already been done. It is to collect of the marshal, who has received it on bills rendered by the plaintiff for a compensation, for the use of that side of the pier, and in that character. Such being the case, there was not the slightest warrant for refusing the plaintiff his judgment. Unless the referee had held the marshal (having the money in his hands) responsible to the plaintiff, the latter would have been entirely without remedy. To whom was he to look ? Certainly not to the government, who have paid those expenses. Has he a lien on the prize proceeds ? He would have, were it not that they have already been distributed, and on such distribution the marshal has received these costs.

VII. The exceptions taken as to the admissibility of the record of proceeding, on the summary proceedings before Judge Reynolds, and on the *certiorari*, were properly overruled. There was material evidence that the plaintiff was owner and entitled to the wharfage in question.

VIII. The referee properly found that the plaintiff was entitled to judgment for the $3386, and the $245.24. (*a.*) The only real issue presented was as to the right of the plaintiff to these wharfages. The defendant admitted he had the money, and was ready to pay it to the one entitled. Ward & Gove had given him notice not to pay it to any one but themselves, and he desired the court to adjudge the proper person to pay it to. (*b.*) The plaintiff produced and proved before the referee an adjudication, finding and determining that the plaintiff was during all the times embraced in those bills, the owner of the addition in question. Such

Kelsey *v.* Murray.

ownership carried with it the right to the wharfages in question. This adjudication was complete. (*White* v. *Coatsworth*, 6 *N. Y. Rep.* 137.) (*c.*) The marshal could not, by refusing to pay the same to the plaintiff, urge upon him a litigation respecting his rights and equities with Ward, Gove & Morris.

*By the Court*, LEONARD, J. The defendant, admitting that he has used the wharf, or dock, mentioned in the complaint, for the purpose of moving certain vessels in his custody as marshal, and that the money due for wharfage, or dockage, is in his hands, sets up a lease of the said wharf, or dock, from the plaintiff to Ward, Gove & Morris, during the time while the said wharfage accrued, and that the said firm have given him notice that they claim the wharfage in question.

For the purpose of barring such claim, the plaintiff gave evidence at the trial that the said lessees had been dispossessed of the premises, under summary proceedings, instituted by the plaintiff, before the city judge of Brooklyn, for the non-payment of rent; and that the judgment, dispossessing the said lessees, had been affirmed by the general term of the Supreme Court, in the second district, *on certiorari*. The defendant insists that the city judge had no jurisdiction over the summary proceedings instituted before him by the plaintiff, because, as he alleges, the wharf, or dock, in question, is not in Brooklyn, but in the county of New York.

The local character of the jurisdiction of the city judge is not disputed, but the geographical situation of the wharf is not so clear. There was no direct testimony at the trial, and no fact has been found by the referee in respect to it. All the proceedings and evidence before the city judge were returned to the certiorari, and although it appears that counsel for the lessees objected to the jurisdiction of the judge, on the ground aforesaid, there is no evidence showing that the wharf, or pier, in question, was not in the city of Brooklyn,

and county of Kings, or within the line of low water mark, on Long Island shore.

The counsel for the defendant attempts to show the wharf, or pier, to be within the county of New York inferentially, from certain statutes and known facts, as follows, viz. The county of Kings is bounded northerly by the county of New York. The county of New York contains all the land under water to low water mark on Long Island shore. The pier is at the foot of Sedgwick street, in the city of Brooklyn.

Chapter 484, Laws of 1836, section 2, makes the bulkhead line, to be located in pursuance of its provisions, the permanent water line of the city of Brooklyn, and prohibits the extension of any bulkhead into the East river beyond such line. In 1857, the legislature established a bulkhead line, or line of solid filling, and prohibited the filling in with solid material in the waters of the port beyond the bulkhead line thereby established. The evidence does not show, however, where is the line of low water mark, or the bulkhead line established by law. There is a bulkhead at the foot of Sedgwick street, and this wharf, or pier, extends 450 feet into the water beyond, but it has not been shown that this bulkhead extends to the line established by law. It cannot be assumed that the law prohibiting the erection of a wharf, or pier, of solid material, in the water outside of a certain established line, has been violated. There is no necessary sequence, from the statutes referred to, or the evidence in the case, that the premises are not within the city of Brooklyn.

I observe also that the affidavit put in by the lessees to the proceedings before the city judge, upon which the issue joined therein was tried, raised no question respecting the location of the premises, and no evidence was offered addressed to that subject. There is no reference to the subject, in the opinion of the Supreme Court, upon the decision of the certiorari, reported in 14 *Abb. Pr. R.* 372, (*People ex rel. Ward* v. *Kelsey*.) Had such a question been properly raised, it would have called for discussion. The decision of the city judge

Kelsey *v.* Murray.

was affirmed, and it does not appear that the lessees have ever sought to question its correctness any further. It was necessary that the lessees should raise the question of jurisdiction, by clear and distinct evidence, as well as by affidavit upon which the issue in the summary proceedings was tried, that the premises in question were beyond low water mark, or outside of the line of the bulkhead established by law. Otherwise the question is waived, for the presumption of law is not against the location of the wharf within the city of Brooklyn. The mere dispute, suggested by the points of counsel in the summary proceedings, does not raise the question of jurisdiction.

There is nothing, so far as I can perceive, to prevent the judgment in the summary proceedings, and the affirmance thereof upon certiorori, being held as a conclusive bar to any claim to the wharfage by the lessees of the plaintiff.

The plaintiff was in the quiet and undisputed possession of the wharf, or pier, at the time the wharfage in question accrued, and it does not appear that the lessees have brought any action against the marshal, or made any claim, except by a general notice, although considerable time elapsed before the trial, and also before the action was brought.

The defendant entirely fails to show that the money in his hands is due to any other person than the plaintiff, or that the lessees have any valid claim to it.

I think the judgment should be affirmed, with costs.

[NEW YORK GENERAL TERM, June 3, 1867. *Leonard, J. C. Smith* and *Ingraham,* Justices.]